RICE v. GARRETT. (No. 1144.)

(Court of Civil Appeals of Texas. Amarillo. April 18, 1917. Rehearing Denied May 2, 1917.)

1. MASTER AND SERVANT ☞358—WORKMEN'S COMPENSATION ACT—NOTICE TO EMPLOYÉ.

Workmen's Compensation Act, Vernon's Sayles' Ann. Civ. St. 1914, art. 5246i, provides that employés of a subscriber shall look for compensation for injuries solely to the Texas Employers' Insurance Association. Articles 5246x and 5246xx provide specifically that every subscriber upon securing a policy shall give notice thereof in writing or print to his employés, also that upon ceasing to be a subscriber he shall give like notice, and also that he shall give such notice to all persons with whom he is about to enter into a contract of hire. Article 5246h provides that, in actions for personal injuries sustained by an employé against an employer

who is not a subscriber, it shall be necessary to a recovery to prove negligence of such employer or some agent or servant of such employer acting within the general scope of his employment. Held that, if the notice is not given, liability is imposed as if the employer were not a subscriber.

2. MASTER AND SERVANT ☞358—WORKMEN'S COMPENSATION ACT—NOTICE TO EMPLOYÉ—EVIDENCE.

As Workmen's Compensation Act, Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246x and 5246xx, provide that notice to an employé that the employer has secured a policy shall be "in writing or print," employer when sued for an injury should show that notice in writing or print was given, or that the employé waived such notice.

3. MASTER AND SERVANT ☞358—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—NOTICE TO EMPLOYÉ—STATUTE—CONSTRUCTION.

Workmen's Compensation Act, Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246x and 5246xx, provide that a "subscriber" shall give notice that he has provided for the compensation for injuries with "the association," and article 5246yyyy provides that any insurance company, which term shall include mutual and reciprocal insurance companies, lawfully transacting a liability or accident business within the state, shall have the same right to insure the liability to pay the compensation provided for by the act, and, when such company issues a policy, the holder shall be regarded as a subscriber, so far as applicable under the act, and the company insures such payment of compensation and shall be subject to certain provisions of the act enumerated. Article 5246yyy defines the word "association" as meaning not only the Texas Employés' Association, but any other insurance company authorized to insure the payment of compensation to injured employés. Held, that the provision of articles 5246x and 5246xx, requiring that the person taking insurance shall be regarded as a subscriber so far as applicable under the act, fixes the duty of the insured, so that the statute requires employers taking either class of insurance to give notice required by such articles.

4. MASTER AND SERVANT ☞358—ACTION FOR INJURIES—ELECTION OF REMEDIES.

Where an employé brought suit at common law against his employer for personal injuries received in the course of his employment, he made an election, and the fact that he subsequently presented a claim to the accident board did not estop him from prosecuting the suit based on his common-law remedy.

5. MASTER AND SERVANT ☞264(13)—ACTION FOR INJURIES—PLEADING—VARIANCE.

In servant's action for injuries caused by strain received in carrying heavy timber with others, where the petition alleged that the timber weighed 1,000 pounds, proof that the timber weighed from 350 to 700 pounds was not a variance, since the weight of the timber given in the petition and as given in the testimony was in each case only an estimate, and was only a collateral fact in determining the ultimate issue as to whether the timbers were too heavy to be safely carried by four men over the ground where they were to be moved.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 873.]

6. MASTER AND SERVANT ☞286(27) — INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

In a servant's action for injuries resulting from a strain received in carrying a heavy timber with others in which it appeared that plaintiff made a protest, before carrying the timber, but had no thought of sustaining an injury, evi-

dence *held* to justify submission of question of defendant's negligence to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1032.]

7. TRIAL ⬅⟶352(1)—INJURIES TO SERVANT—SPECIAL ISSUE.

Action of court in submitting the issue, "Did plaintiff sustain the injuries or any of them, alleged in his petition?" was not erroneous, in that it does not limit the time or place where said injuries happened or occurred.

[Ed. Note.—For other cases; see Trial, Cent. Dig. § 840.]

8. TRIAL ⬅⟶352(5) — INJURIES TO SERVANT — SPECIAL ISSUE.

Action of the court in submitting an issue requesting the jury to find whether defendant's foreman required plaintiff to, carry the timber with rubbish on the ground, as alleged in petition, was not erroneous as submitting two questions of fact in the same issue, since the issue submitted was the substance of the charge and the ultimate fact to be proven.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 841.]

9. TRIAL ⬅⟶351(5) — SPECIAL ISSUES — REQUESTS.

Refusal to submit special requested issues sufficiently covered by submitted issues was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834.]

10. TRIAL ⬅⟶352(5) — REVIEW — SPECIAL ISSUES.

A submitted special issue, "If the defendant or his foreman did make the requirements or order inquired about in the third special issue, was it negligence of the defendant to do so?" was not objectionable as intermingling one issue with another.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 841.]

11. TRIAL ⬅⟶133(6)—ARGUMENT OF COUNSEL—ACTION OF COURT.

Plaintiff's attorney in his argument stated that defendant would not have to pay any judgment rendered against him, but that the insurance company would have to pay it. On objection, the court charged the jury that the argument was improper and instructed them not to consider it, and the attorney withdrew his statement. The policy was in evidence, so that the facts which were the basis of the statement were before the jury, though the insurer's liability was not in issue. *Held*, that the verdict will not be regarded as the result of such improper statement; the amount awarded not being larger than the evidence would warrant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Suit by H. R. Garrett against W. M. Rice. Judgment for plaintiff, and defendant appeals. Affirmed.

Veale & Lumpkin, of Amarillo, for appellant. L. C. Barrett and J. N. Browning, both of Amarillo, for appellee.

BOYCE, J. This suit was brought by appellee, Garrett, against appellant, Rice, to recover damages, in the sum of $20,000, for personal injuries alleged to have been sustained by appellee while working for appellant, who was a contractor, engaged in the erection and repair of buildings, employing some 15 or 20 men. Appellee alleged that, under the direction of appellant's· foreman, he and three other men attempted to carry a heavy timber over ground covered with rubbish, and while so engaged wrenched and strained his back, dislocating the vertebra, which resulted in permanent injury. Appellee alleged further that said piece of timber was too heavy for four men to carry safely over the ground where they were ordered to carry the same, and that protest was made to the foreman in charge of the work to that effect, but who assured the men that they could carry the timbers and commanded them to proceed to do so; and that defendant was negligent in requiring the plaintiff to lift and carry said timber under the conditions existing. A trial resulted in judgment for plaintiff, from which this appeal is taken.

The appellant, Rice, filed a plea in abatement, in which it was alleged that he was a "subscriber" under the Workmen's Compensation Act, Vernon's Sayles' Civil Statutes, articles 5246h to 5246zzzz, having in accordance with the provisions of article 5246yyyy procured insurance with the American Indemnity Company to protect his employés in lieu of becoming a member of the Texas Employers' Insurance Association, provided for by said act; that appellant had given appellee the notice required by said law that he had provided for compensation for injuries to his employés and had complied with the law so as to entitle him to the benefits thereof. Wherefore, he alleged that under the provisions of article 5246i he was not liable to suit for damages resulting from the alleged injury. It was shown that appellant, at the time of the accident, had a policy issued by the American Indemnity Company, providing the insurance referred to in article 5246yyyy, and the question presented for decision on the plea in abatement was whether it was necessary for appellant, in order to escape personal liability for the alleged damages, to show that Garrett had notice of such fact, and· whether he in fact did have notice.

Appellee was a day laborer and had begun work for appellant only on the morning of the alleged accident. He was not given any personal written notice of the fact that appellant had taken insurance under the act, and the preponderance of the testimony seems to be that no written or printed notices to this effect were posted on the premises where the work was being done. Appellee had worked for appellant occasionally before this time; the last occasion before this being in November, 1915, prior to the date of the alleged accident on January 31, 1916, at which time appellee worked for appellant about 36 hours at the courthouse building at Vega, Tex. He also worked for appellant for a few days once before on such build-

⬅⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ing, and also on two other buildings prior to the time he worked on the courthouse at Vega; the length of time he worked on these jobs not being shown. Appellant testified that he had notices of the fact that he had provided insurance under the compensation act posted up at each of these premises other than the premises at which the accident occurred, though some of the employés working on the Vega courthouse denied having seen any notices there. The appellee denied that he had ever seen any notices posted on any of the premises where he worked for appellant, and testified that he did not know that Rice had insurance. A few days after the accident, appellee inquired of appellant, Rice, if he did not have insurance. On trial of the plea in abatement, with the case on its merits, the court submitted the following special issue to the jury:

"Did the plaintiff receive written or printed notice before the said plaintiff was injured, if he was injured, to the effect that defendant had provided for payment of compensation, etc.?"

The jury answered this issue in the negative, and the court thereupon overruled the plea in abatement.

Appellant, by his first six assignments, the tenth assignment, and twentieth assignment, contends that no notice to appellee that appellant had provided for compensation for injury under the act was necessary; and by his eighth and ninth assignments complains of the action of the court in limiting the issue of notice as submitted to written or printed notice, and refusing to submit an issue as to whether the plaintiff "knew from any source, prior to the time he went to work for defendant, that the defendant had such insurance."

A consideration of the Workmen's Compensation Act referred to, and the analysis thereof, as found in the opinion of the Supreme Court, in the case of Middleton v. Texas Power & Light Co., 185 S. W. 556, discloses, we think, that it was the intention of the Legislature to make it what is commonly known as elective, as to the employer and also the employé, in a limited sense. Many states have in recent years adopted legislation of this character, and, on account of the radical change made by the provisions of such acts in the rights and liabilities of employer and employé, as determined by the prevailing principles of common law and statutory law in force prior thereto, there was evidently some doubt in the minds of the legislators and of the courts as to the constitutionality of a law that would be compulsory. But it was generally recognized that, if the parties were given the opportunity of election or rejection of the provisions of the act, there would then be no constitutional objection, because upon such election the provisions of the law would become a part of the contract of employment and the rights of the parties result-

ing might properly be governed thereby. Honnold on Workmen's Compensation, §§ 20, 21; Workmen's Compensation Acts, a Corpus Juris Treatise Recently Issued, §§ 2–6; Mathison v. Minneapolis St. Ry. Co., 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; Albanese v. Stewart, 78 Misc. Rep. 581, 138 N. Y. S. 942. It is stated by Honnold that of 34 acts of the several states and territories of the United States 25 are elective as to private employers and 9 compulsory. The Texas act is strictly elective as to the employer, but election as to the employé is only as to acceptance or rejection of employment by one who may or may not be a subscriber. If the employment is accepted from a subscriber with the notice provided by law that the employer is a subscriber, the employé then has no further election—different in this respect from the statutes of some states which provide that even then the employé may give the employer written notice that he will not be bound by the provisions of the compensation act, and in such instances it will not be operative as to him. Ordinarily, of course, as under our statute, there is no difficulty in ascertaining whether the employer has elected to become subject to the provisions of the act; for, of necessity, his election is evidenced by records from which the fact may be readily ascertained and proven. The matter of evidencing the election of the employé, however, it will be readily seen, presents more practical difficulties. The employés of a particular employer are changing from time to time, many may work but a day or two, others for years, and usually the contract of employment is verbal and most of its terms implied. The compensation acts of many of the states provide that unless the employé, when he accepts service, gives written notice himself that he will not be bound by the provisions of the compensation act, he will be held to have waived his right to recover under the common law. The statutes of other states provide that the employer shall give notice to the employé of the fact that he himself has taken advantage of the provisions of the act, and if after such notice the employé accepts employment, or continues in the service, he will be conclusively held to have elected also to be subject to the act. Some statutes provide for the specific manner of giving notice; for instance, posting thereof on the premises of the employer. Daniels v. Charles Boldt Co. (W. Va.) 88 S. E. 613. In all elective acts, however, there is some provision of the statute prescribing the manner in which the employé is put upon his election. These provisions are necessarily important because the election enters into the contract of employment, and the liability is widely different in case an employé has accepted under the act, from that in the event he has not.

[1, 2] While article 5246i of our statutes

provides absolutely that "the employés of a subscriber shall have no right of action against their employer for damages for personal injuries * * * but * * * shall look for compensation solely to the Texas Employés' Insurance Association," articles 5246x and 5246xx provide specifically that every subscriber upon securing a policy shall give notice in writing or print to his employés that he has provided for payment of compensation for injuries with the association; also, that upon ceasing to be a subscriber he shall give like notice to his employés, and also that a subscriber shall give such notice to all persons with whom he is about to enter into a contract of hire. While there is no specific statement in the statute of the result of the failure on the part of the employer to give the notice, it was the evident intent of the Legislature, in prescribing for such notice to the employé under the varied circumstances stated in the statute, to provide this means of putting the employé upon his election, giving him the opportunity, after notice, of accepting or rejecting the employment. If the notice is not given, it would seem that the liability imposed by article 5246h, as if the employer were not a subscriber, would enter into the contract of employment and determine the rights of the parties. If the notice is given, then the liability is determined by the other provisions of the compensation act. Any other holding would defeat the entire plan of the act, as it would appear that the Legislature had in mind from a consideration of the history of such legislation and as it has been construed by the Supreme Court. As notice then determines the question of the election of the employé, and so vitally affects the liability of the parties entering into the contract of employment in the event of injury to the employé, and the statute itself has provided that the notice which thus forms the basis of a liability different from what it would otherwise be, shall be "in writing, or print," it seems to us that the employer, in order to establish the election of the employé and that the contract of employment was thus made subject to the terms of the compensation act, should show that the notice in writing or print was given or that the employé waived such notice—there is no question of waiver in this case. It would require a very liberal construction of the act to hold that a provision for notice in writing or print which was intended as the foundation on which the contract of the parties was to rest could be satisfied by showing facts from which it might possibly be inferred that notice of some sort had been acquired from sources and in a manner other than that provided by the statute. It seems reasonable that the Legislature had in mind the importance of some kind of notice that might be shown with reasonable certainty, so that the standard of liability in case of injury might be established by a character of testimony that would leave the matter in less doubt than it would be if the fact of notice were made the result of the determination of a question of actual notice which might be established by circumstances and inferences. In order to hold that any other character of notice is sufficient, we would have to read something into the statute, adding to its express terms, repeated in a number of ways. We do not feel inclined to do this.

The Court of Civil Appeals at San Antonio has recently decided, in the case of Kampmann v. Cross, 194 S. W. 437, not yet officially reported, that notice to the employé is necessary in order to free the employer from general liability, though the question as to whether or not actual notice might be shown in other ways than that provided by the statute was not decided.

In the case of Young v. Duncan, 218 Mass. 346, 106 N. E. 1, it was held, under the Massachusetts statute, that a provision for notice by the employer to the employé was directory. However, the Massachusetts statute contained an express provision that the employé should be held to have waived his right of action at common law if he had not, at the time of his contract of hire, given the employer notice in writing that he claimed such right, and this provision of the statute was held to be independent of the provision that the employer should give notice and was given controlling effect. In the case of Daniels v. Charles Boldt Co. (W. Va.) 88 S. E. 613, it was held by the court, under the West Virginia statute, that actual notice was sufficient though the manner of posting notices on the premises by the employer, as prescribed by the act, had not been followed. An examination of the provisions of the act of West Virginia, however, shows that it was provided thereby that the continuation in the service of an employer with notice should be deemed a waiver by the employé of his common-law right of action. A subsequent section of the act provided that the employer should post notices in conspicuous places about his place of business, and that the same, when so posted, should constitute sufficient notice of his election. Under these provisions of the West Virginia statute, we do not consider the case as controlling.

The other cases relied on by appellant are mostly on the question of notice of the accident, holding that written notice of the accident is not necessary where the employer has actual notice. A reading of the cases cited, however, discloses that even in those cases the holding was based on some provision of the statute to the effect that in such cases actual notice was sufficient.

Appellant contends that, even if the statute generally requires notice by the employer, it is not applicable to one who is not a subscriber to the Texas Employés' Association, but who has taken out insurance in some insurance company, in lieu thereof, relying in support of this position upon articles

5246x and 5246xx, which provide that a "subscriber" shall give notice that he has provided for the payment of compensation for injuries with "the association"; and article 5246yyy, which provides that:

"Any insurance company, which term shall include mutual and reciprocal insurance companies lawfully transacting a liability or accident business within this state, shall have the same right to insure the liability to pay the compensation provided ·for by part 1 [articles 5246h to 5246o] of this act, and when such company issues a policy conditioned to pay such compensation the holder of such policy shall be regarded as a subscriber so far as applicable under this act; and when such company insures such payment of compensation it shall be subject to the provisions of parts 1, 2 and 4 [articles 5246h–5246qqq, 5246yyy–5246zzzz] and of sections 10 [article 5246u], 17 [article 5246ww], and 21 [article 5246xxx], of part 3 of this act."

[3] Appellant asserts that the specific reference of the last clause quoted to particular provisions of the statute, not including articles 5246x and 5246xx, is an exclusion of the application of such articles to an employer taking insurance under said article 5246yyy. We do not think this is correct. The first clause of the statute quoted provides that the person taking such insurance "shall be regarded as a subscriber so far as applicable under this act," and we think fixes the duty of the insured; the latter clause has reference to the application of certain parts of the law to the insurance company. This conclusion, we think, is made clear by the definition of the word "association," contained in article 5246yyy, as meaning not only the Texas Employés' Association, but any other insurance company authorized to insure the payment ·of compensation to injured employés. So, we think it is clear that the statute requires employers, taking either class of insurance, to give notice required by articles 5246x and 5246xxx. The same reason exists for notice in both cases, and any other construction would result in an incongruity in the act itself.

The Supreme Court of the United States, in the cases of New York Central R. Co. v. Sarah White, 243 U. S. 188, 37 Sup. Ct. p. 247, 61 L. Ed. ——, Hawkins v. Bleakly, 243 U. S. 210, 37 Sup. Ct. 255, 61 L. Ed. ——, and Mountain Timber Co. v. State of Washington, 243 U. S. 219, 37 Sup. Ct. 260, 61 L. Ed. ——, recently decided, had before it the constitutionality of the compensation acts of New York, Iowa, and Washington, upholding the acts in each instance, and some history of this character of legislation, together with the citation of many authorities, discussing the various acts, may be found in the opinions of the court in those cases. The New York and Washington acts were in many of their features compulsory, and the court held them to be constitutional. We do not think, however, that these cases affect the construction of our statute in any way. We think that it was the intention of the Legislature of Texas to adopt an elective act, the written or printed notice to the employé being the fact which puts him upon his election. And we have concluded that the employer, in order to show that the employé has elected to take under the compensation act, should show that the employer has given the notice required by the act, or the employé has in some manner waived it. It is not necessary in this case to determine whether the written or printed notice has to be personally served on the employé, or whether posting the written or printed notices on the premises would be sufficient notice, or whether notice once given would be effective on subsequent employments of the same person, as plaintiff and defendant, on the trial, introduced evidence as to whether notices were posted on the premises where plaintiff was working at the ·time of the alleged accident, and also on other premises where he had worked for appellant on previous occasions. The case was evidently tried on the theory that notice received by plaintiff by such means and on the occasion of former employment would be sufficient. We confine our ruling to a decision of the specific questions presented by the assignments heretofore referred to.

[4] The appellant, by his seventh assignment, contends that the appellee, by the presentation of a claim to the accident board at Austin, elected to "pursue that remedy to recover damages for his alleged injuries and is now estopped from prosecuting this suit." The appellee, Garrett, a few days after the alleged accident, inquired of Rice if he did not have insurance and suggested that some steps should be taken to get the compensation for him, and, at Rice's suggestion, secured a blank report of accident, and requested the foreman on the job to make it out, which was done; appellee assisting in making it out by suggesting the answers to the inquiries· contained in the ·accident report. The report was left with the foreman, and it is not shown when, if at all, it was filed with the accident board. Appellee filed this suit against Rice on February 23, 1916. On May 5, 1916, he signed two instruments addressed to the industrial accident board. Austin, Tex.—one designated "Claim for Compensation for Damages," and beginning, "This is to notify you, W. M. Rice, that I claim compensation from you under the Employers' Liability Act for personal injury sustained," etc.; the other designated "Notice of Injury," and beginning, "This is to notify you, W. M. Rice, as you have been notified before herein, and know of the fact," etc. On May 7, 1916, appellee's attorney addressed a letter to the industrial board at Austin, in which he referred to the fact of the accident and the recent decision of the Supreme Court, in which it was decided that the compensation act was constitutional, and stated that he had "concluded to pursue the remedy, at least to comply with the law,

which seems to be precedent to the bringing of this suit in order that my client may obtain compensation for his injuries." This letter also stated that Rice had failed to notify him or his client as to the company in which he was insured, and asked for information as to the name of the company in which Rice had insurance and as to the manner of procedure. To this letter the secretary of the board replied that Rice carried a policy with the American Indemnity Company and suggested that the matter be taken up with the said company. A letter from the American Indemnity Company was introduced, dated May 12th, addressed to appellee's said attorney, which referred to a letter from appellee's said attorney of May 10th, relative to said claim, concluding:

"If you will dismiss suit now pending we shall be glad to treat with you concerning settlement of this claim and request that you confer with our attorney, Messrs. Veale & Lumpkin, concerning same."

In Ruling Case Law, vol. 9, p. 960, we find the following statement of what constitutes an "election":

"An election of a remedy which has the effect of an estoppel in pais or an estoppel by record in that class of cases in which the remedies are really inconsistent, is generally considered made when an action has been commenced on one of such remedies. Some courts go so far as to say that in such cases the choice of a remedy once made cannot be withdrawn or reconsidered though no advantage has been gained nor injury done by the choice, and no injury would be done by setting the choice aside. But the more reasonable rule is that the mere bringing of an action which has been dismissed before judgment and in which no element of estoppel in pais has arisen, that is where no advantage has been gained or no detriment has been occasioned, is not an election."

See, also, Bigelow on Estoppel, p. 739; Broadkey v. Lessee, 157 S. W. 457; Jirou v. Jirou, 136 S. W. 498; Baumam v. Jaffrey, 6 Tex. Civ. App. 489, 26 S. W. 260; notes to Register v. Carmichael, 34 L. R. A. (N. S.) 309.

If appellee had the right of election, we think an application of the principles announced in the authorities referred to would lead to the conclusion that he has elected to pursue his common-law remedy against his employer. This suit was filed first and has been carried forward. The filing of the claim at Austin was subsequent to the filing of this suit, and was evidently done in a tentative sort of way, and does not seem to have been regarded by the industrial board as a proceeding regularly filed, for plaintiff was referred to the insurance company, and, when the insurance company requested a dismissal of this suit before considering the claim, the matter seems to have been dropped.

[5] On the trial on the merits, it was shown that appellant, Rice, was engaged in reconstructing a building that had been burned, and the place where the work was being done was covered by débris and material of various kinds. Appellee had just begun to work for appellant on the morning when he claimed to have been hurt, and he, with three other men, were put to moving some timbers 10x10 inches, 20 feet long. Protest was made by the employés that the timbers were too heavy for the men to carry under the circumstances, but the foreman had ordered them to proceed with the work, stating that if they could not carry them he would get men that would. The employés, proceeding with the work, had moved a number of pieces of timber when the appellee stumbled over a piece of timber or pipe, and in falling with the weight hurt his back, which resulted, according to the testimony of appellee and his witnesses, in permanent dislocation and injury. The jury found, in response to special issues, that the plaintiff sustained the injuries as alleged in his petition; that the defendant required the plaintiff and three other men to carry the timber with rubbish on the ground, under the conditions alleged in plaintiff's petition; that such requirement was negligence which was the proximate cause of the injury to plaintiff; and that the plaintiff was not himself guilty of contributory negligence; and assessed the plaintiff's damages at the sum of $3,000.

The plaintiff alleged that the timber he was carrying weighed about 1,000 pounds. According to the estimate of the witnesses, the timber being carried weighed from 350 to 700 pounds. The appellant, by his eleventh and twelfth assignments, asserts that there is a variance between the pleading and the proof on the weight of the timber, and that it was improper, under the proof, to submit any issue as to whether plaintiff was ordered to carry timber as alleged in his petition. The weight of the timber as given in the pleading and the testimony was evidently only an estimate and was only a collateral fact in determining the ultimate issue as to whether the timbers were too heavy to be safely carried by four men over the ground where they were to be moved. We think these assignments should be overruled.

[6] The thirteenth assignment complains of the refusal of the court to instruct the jury peremptorily to find a verdict for the defendant, it being asserted that the facts proven were not sufficient to establish any negligence of the defendant, or that it was the proximate cause of the injury to plaintiff. In addition to the facts we have already stated, the plaintiff testified that he did not think of sustaining any injury when he made the protest against carrying the timber, but merely thought that they were too heavy and the work was too hard; neither was there any testimony that any question of injury was in the minds of the foreman or the other employés. We think the testimony was sufficient to justify the submission of the issue to the jury. Bonn v. Railway Co., 82 S. W. 808, 44 Tex. Civ. App. 631, 99 S. W. 413; G., H. & S. A. Ry. Co. v. Brown, 181 S. W. 238;

Bennett v. Railway Co., 159 S. W. 132; M., K. & T. Ry. Co. v. Freeman, 168 S. W. 69; Clark v. Union Iron Co., 234 Mo. 436, 137 S. W. 577, 45 L. R. A. (N. S.) 295.

The fourteenth assignment of error is not well taken. The plaintiff's petition alleged specifically that the acts of negligence set up were, singly and taken together, the proximate cause of the injury to plaintiff.

[7] The fifteenth assignment complains of the action of the court in submitting the following issue, "Did plaintiff sustain the injuries or any of them, alleged in his petition?" because it does not limit the time or place where said injuries, if any, happened or occurred. We do not think the jury could have misunderstood the issue thus submitted, and overrule this assignment.

[8] This sixteenth assignment of error complains of the action of the court in submitting an issue to the jury requesting them to find whether defendant's foreman required plaintiff to carry the timber with rubbish on the ground, as alleged in plaintiff's petition, because two questions of fact were thus submitted in the same issue. The issue submitted was the substance of the act of negligence charged—the ultimate fact to be proven. We do not think there was any error in the submission of the issue in this way. Oaks v. West, 64 S. W. 1033; Hartford Fire Insurance Co. v. Post, 25 Tex. Civ. App. 428, 62 S. W. 140; Cushman v. Masterson, 64 S. W. 1031. In any event, it does not appear that probable harm could have resulted.

[9] The seventeenth and eighteenth assignments complain of the action of the court in refusing to submit issues requested by the appellant, requiring a finding as to whether the plaintiff received any injury while at work for the defendant on the Bryant factory, and whether the plaintiff is malingering. We think these issues were sufficiently covered by the issues submitted to the jury by the court.

[10] The nineteenth assignment complains of the action of the court in submitting the following issue, "If the defendant or his foreman did make the requirements or order inquired about in the third special issue, was it negligence of the defendant to do so?" because, as appellant asserts, the court should not intermingle one issue with another. We overrule this assignment.

[11] One of appellant's attorneys, in making his argument to the jury, stated that the defendant, Rice, would not have to pay any judgment rendered against him, but that the insurance company would have to pay it. Upon objection, the court charged the jury that the argument was improper and instructed them not to consider it, and thereupon the said attorney stated to the jury that he desired to withdraw said remarks. Appellant, by his twentieth assignment of error, asserts that the verdict was rendered through passion and prejudice, as the result of said argument. We do not regard the argument as proper. The question of the liability of the insurance company to Rice, in the event judgment should be against him, could not properly be decided in this case, either by the lower court or by this court. It could have nothing to do with the answer of the jury to the issues submitted to them, and the statement was evidently made for the purpose of appealing to a natural tendency of jurors to regard the plaintiff's case more liberally where the defendant is a corporation, receiving a compensation to insure against accidents, than if the case were against an individual. But the matter for our determination is whether the argument probably caused an improper verdict. The policy of insurance was in evidence, so that the facts which were the basis of the statement were in evidence before the jury, and it has been held that where in an argument an attorney tells the jury something that they already know, or can readily deduce from the facts in evidence, the verdict will not be regarded as being the result of such improper statement. Railway Co. v. Smith, 93 S. W. 184; Marshall & Co. v. Scharnberg, 190 S. W. 229; S. W. Tel. & Tel. Co. v. Sheppard, 189 S. W. 799; Tex. Tel. & Tel. Co. v. Seiders, 9 Tex. Civ. App. 431, 29 S. W. 258. While, as stated, it is not proper for us to determine the question of whether Rice could recover on the policy, it is proper for us to say that a reading of the entire policy would probably have led the jury to the same conclusion as was announced by the attorney in the argument; so that, before we can assume that the statement was harmful, we must not only assume that the jury disregarded the instructions of the court not to consider the statement, but that if they were open to the consideration of such matters these suggestions would not have been obtained from their reading of the policy, independent of the statement made by counsel. The testimony is sharply conflicting as to whether the appellee is truly injured, as he and the physicians who testify for him claim; three physicians, two of them acting under appointment of the court to examine plaintiff, having testified that there was no such injury to the spine and hip as claimed by the plaintiff. The jury was the proper tribunal to settle this issue. If the appellant is injured as his testimony indicates, the amount of the verdict is not larger than the evidence would warrant, so that we cannot say that the verdict itself furnishes any evidence that it was the result of any improper motive. The trial court qualified the bill of exceptions by calling attention to the fact that the policy was before the jury and evidently concluded that the improper argument probably did not result in harm to appellant. Under these circumstances, we do not think we would be justified in finding that the statement probably resulted in harm.

Affirmed.