## PRODUCERS' OIL CO. v. DANIELS.*
### (No. 8715.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 27, 1917. On Motion for Rehearing Dec. 9, 1922. Rehearing Denied Jan. 20, 1923.)

**1. Trial ☞4—Refusal to find separately on plea in abatement before submission on merits of case held not error.**

Where, in an employee's action for injuries, defendant interposed a so-called plea in abatement on the ground that defendant had provided for payment of compensation for personal injuries to its employees under Acts 33d Leg. (1913) c. 179 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzz), by contracting with a state employers' insurance association, it was not error for the court to refuse to consider first and separately the plea before submission of the evidence on the merits, but the action of the trial court in requiring the jury to find as to the facts upon which the plea was predicated before considering further facts was a substantial compliance with Vernon's Sayles' Ann. Civ. St. 1914, art. 1947.

**2. Trial ☞4—Court has discretion to require facts in support of plea in abatement to be tried as a separate issue before trial on merits.**

It rests in judicial discretion to permit a plea in abatement, which is to be determined after hearing the evidence in support thereof, to be tried as a separate issue before a trial on the merits.

**3. Pleading ☞76—Plea of compliance with Workmen's Compensation Law a plea in bar rather than in abatement.**

In an employee's action against his employer for personal injuries, where the employer interposed a plea that it had provided for payment of compensation for personal injuries under Acts 33d Leg. (1913) c. 179 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzz), by contracting with a state employers' insurance association for payment of indemnity, this was properly a plea in bar, so far as defendant was concerned, rather than a plea in abatement, for if defendant had notified plaintiff prior to his employment that it was a subscriber to the association and had given notice to the Industrial Accident Board as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 5246qqq, plaintiff would have no cause of action against his employer, in view of article 5246i.

**4. Master and servant ☞409½, New, vol. 7A Key-No. Series—Whether employee had been notified that employer had complied with Employers' Liability Act held for jury.**

In an employee's action against his employer for personal injuries, wherein the employer pleaded compliance with Acts 33d Leg. (1913) c. 179 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), in that it contracted with a Texas employers' insurance association for the payment of indemnity to injured employees, *held* it was not error to refuse to give a peremptory instruction for defendant, on the ground that the undisputed proof showed that plaintiff had been notified that the employer had provided compensation under the Employers' Liability Act.

**5. Master and servant ☞358—Notice of operation under Compensation Law to be given employees personally.**

Notice in writing that employer has secured a policy, which Workmen's Compensation Law, pt. 3, §§ 19, 20 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246x, 5246xx), provides in general terms the employer shall give his employees without prescribing how it shall be given, and which is necessary to relieve the employer of liability, must be given the employee personally.

Buck, J., dissenting in part.

### On Motion for Rehearing.

**6. Master and servant ☞405(3)—Finding that employer had not personally served employee with notice of compliance with compensation law not justified by evidence.**

In an action by an employee for personal injuries against his employer, where the issue was whether the employee had been actually served by the employer with printed notice that employer was a subscriber to the Texas Employers' Insurance Association, evidence *held* not to warrant a finding that defendant had not personally served plaintiff with notice.

Conner, C. J., dissenting.

Appeal from District Court, Clay County; Wm. N. Bonner, Judge.

Action by Clyde Daniels against the Producers' Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed on rehearing.

Conforming to Supreme Court's answers to certified questions, 244 S. W. 117.

Kay & Akin, of Wichita Falls, and Harry P. Lawther, of Dallas, for appellant.

Taylor, Allen & Taylor and Wantland & Parrish, all of Henrietta, for appellee.

BUCK, J. This is an appeal from a judgment in the sum of $600, on a jury verdict in favor of appellee against appellant. Plaintiff alleged, in substance, that he was in the employment of defendant, working on an oil well, in September, 1916, near Petrolia, in Clay county; that in the performance of his duties he climbed on a derrick platform, and, in attempting to descend therefrom, he took hold of a round of the ladder, which, being weak and defective, broke and caused him to fall from 18 to 20 feet; that he weighed 237 pounds and fell with great force across a piece of timber, and suffered certain described injuries.

Defendant filed a so-termed plea in abatement, alleging that, at the time plaintiff's injuries were alleged to have occurred, and at all times during said employment, the defendant had provided for payment of compensation for personal injuries to its employees

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 7, 1923.

under chapter 179 of the Acts of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), and that, before plaintiff was employed and before he was injured, defendant had complied with all the requirements of the law above mentioned, and had in all things provided for the indemnity provided in said law, and defendant had contracted with the Texas Employers' Insurance Association for the payment of indemnity, as provided by law, to such of its employees as should suffer personal injuries, and for which said association would be liable; that these facts were well known to plaintiff at the time of his employment and that defendant had given notice in writing, as required by law, to the plaintiff to the effect that this defendant had provided for payment for compensation to its employees for injuries under said act; that, immediately after said alleged injuries and within the time required by law, this defendant gave notice in writing to the State Industrial Board, through and to its proper officers, informing said Board of the date and nature of said accident, and the circumstances under which it had happened, as far as known to defendant, and in all things complied with the law as to giving notice to said Board and to the Texas Employers' Insurance Association. Wherefore defendant prayed that the court hear proof upon its plea in abatement, and that, upon hearing, it be sustained and the cause dismissed as to plaintiff.

The court declined to dispose of the plea in abatement before hearing evidence on the merits, but did submit to the jury the two issues, to wit:

(1) "Did the defendant company give the notice provided for in the law in writing or print to the plaintiff prior to the alleged injuries?"

(2) "Did the plaintiff know at any time prior to his injury that the defendant company had contracted with the Texas Employers' Insurance Association for the payment of indemnity as provided by law to such of its employees as should suffer death or personal injury?"

The court instructed the jury that, if they should answer either of these special issues in the affirmative, their foreman should sign his name to the verdict and return it into court without considering the further charge given and other issues submitted; but that, if they should answer the foregoing special issues in the negative, they should refer to and answer the issues thereinafter submitted. The jury answered both of the issues submitted under the plea in abatement in the negative, and they proceeded to consider and answer further issues submitted on the merits of the case, which answers were favorable to plaintiff and formed the basis for the judgment rendered.

[1, 2] We do not think there was any error in the refusal of the court, under the circumstances related, to consider first and separately the defendant's plea in abatement before the submission of the evidence on the merits of the case; but that the course of the trial judge, in requiring of the jury a finding as to the facts upon which the plea in abatement was predicated before they considered further facts to be submitted, was a substantial compliance with the requirements of article 1947, V. S. Texas Civil Statutes. Holstein v. Gardner, 16 Tex. 115; Breen v. T. & P. R. R. Co., 44 Tex. 302. It rests in judicial discretion to permit a plea in abatement, which is to be determined after hearing the evidence in support thereof, to be tried as a separate issue before a trial on the merits. Tynburg & Co. v. Cohen, 67 Tex. 220, 2 S. W. 734; Id., 76 Tex. 409, 13 S. W. 315. Chief Justice Graham of the Amarillo Court of Appeals in P. & N. T. R. Co. v. Thompson, 140 S. W. 1148, discusses the question here involved in the light of rule 24 (67 S. W. xxii) for the district and county courts, and says:

"It often occurs that the same testimony is necessarily heard on some branch of the main case as would be introduced in support of the motion, and in such case a useless consumption of the time of the court would result if required to dispose of such motion before proceeding with the case on its merits; and to give the rule such a construction in such a case would thwart the very purpose of the rules—that of expediting the business of the courts. * * * We think a proper construction of rule 24 does not require that the trial court in all cases dispose of such motions before hearing evidence on the issues in the main case; but we do think that rule 24 requires the motion to be disposed of before disposing of the main case. Believing that it was within the sound discretion of the court below to proceed with the trial as he did, and appellants having failed to show affirmatively to our satisfaction that the trial court improperly exercised its discretion, and that appellants suffered injury thereby, we overrule the third assignment of error."

[3] We think in this case, as found in the last-cited case, that at least no injury has been shown as a result of the action of the court in the respect complained of. Moreover, this was properly a plea in bar, so far as the defendant was concerned, rather than a plea in abatement. For if the defendant had established the truth of its allegations to the effect that it was a subscriber to the Texas Employers' Insurance Association, and had given notice to the plaintiff, prior to his employment, that it was such a subscriber, and had given notice to the Industrial Accident Board, as required by article 5246qqq, then plaintiff would have had no cause of action against his employer, which the evidence shows was a subscriber, but his right of action would have been against the Texas Employers' Insurance Association. Article 5246i, V. S. Texas Civil Statutes. Therefore, defendant's so-called plea in abatement presented a state of facts which, if true, would

have been a complete defense to plaintiff's suit.

The "distinction between a plea in abatement and a plea in bar is that the former must not only point out the plaintiff's error, but must show him how it may be corrected; so as to avoid the same mistake in another suit, for the same cause of action. * * * A plea in bar, unlike a plea in abatement, offers matter which is a conclusive answer or defense, to the action upon the merits." Tinnin v. Weatherford, Dall. Dig. 590.

Therefore we overrule appellant's first assignment.

[4] The second assignment is directed to the failure of the court to give a peremptory instruction for the defendant, on the ground that the undisputed proof showed 'that at least upon two occasions the plaintiff had executed a written acknowledgment and receipt of a copy of defendant's notice to the effect that it had provided for compensation under the Employers' Liability Act. The evidence does show that on two separate occasions, to wit, on April 8, 1915, and on December 1, 1915, plaintiff below did sign the following acknowledgment:

"I acknowledge receipt of my copy of the above notice * * * and agree in case of injury to accept compensation under above law, and waive all action for damages."

On the same sheet of paper and above this acknowledgment was printed the following:

"C257 15 44 Notice. As required by chapter 179, of the Acts of 1913, of the Legislature of the state of Texas, entitled: 'An act relating to employers' liability and providing for the compensation of certain employees and their representatives and beneficiaries, for personal injuries sustained in the course of employment, and for death resulting from such injuries,' etc.

"This will give you notice that Producers' Oil Company has provided for payment of compensation for such injuries to its employees under said act with the 'association' as provided in said act. '(This notice is given in duplicate, one copy to be retained by employee; the other copy must be dated and signed by employee and returned to the legal department at Houston, Texas.)

"Producers' Oil Company,
"By R. E. Brooks, President."

Plaintiff below acknowledged, upon cross-examination, that he signed both of these receipts of notice, but he further testified that at the time he signed them he did not know the purport of the instrument he was signing. He testified:

"Yes, as I told the jury a while ago, I did not think I had signed but one of these papers, but I see my signature signed by me to the other one. I do not recollect them giving me copies of these papers at the time I signed them. I see this notice says: 'I acknowledge receipt of my copy of the above notice, this 1st day of December, 1915,' and so on. I am not going to say that they did or that they did not give me a copy of them, because I don't know."

In another place he testified:

"Will say that while I was in Electra I signed up something in their office there. When I signed that, they asked me who to notify if I got hurt, or sick, or anything like that, and that is what they asked me to sign. When they got me to sign that paper, they did not say anything to me about insurance, and they did not give me a copy of what I signed. Will say that I do not recollect whether they gave me a copy of what I signed or not—I would not say for sure that they did or did not. I did not know from what they said to me at the time I signed that paper or from anything else, at that time or any other time, that they had any insurance in any kind of a concern in Texas, for employees; they did not tell me at that time or any time that they had insurance for their employees; and I did not know it."

He further testified:

"I did just work for the Producers' Oil Company irregularly. At the time that I was injured on the 14th of September, I had not been informed by the company in writing or otherwise, or in any way informed, that they had insurance for me of any kind. I had no notice of any kind or character that I recollect of that they were carrying insurance in any concern for me. I do not recollect that they at any time told me, or that any of their employees told me, or that any man told me, that they were carrying insurance in the Texas Employers' Liability Association, or any other concern, for my protection. They did not give me a copy of any written notice of any kind after I went to work for them the last time. At the time I received these injuries on the derrick I did not know anything about them carrying any insurance for me."

There is much of this testimony on the part of the appellee upon this point and of this character, and we are of the opinion that the fact that the plaintiff below acknowledged to his signature to the receipt of the copy, and that such receipt was in print and followed immediately after the written or printed notice required under the act, would not necessarily require the court to give a peremptory instruction, the request for which was based on the contention that the evidence of the giving of the notice was in writing and therefore was a matter to be passed on by the court, or to be controlled by the court in a peremptory instruction to the jury. Hence, we overrule appellant's second assignment.

But we are of the opinion that appellant's fifth assignment presents error, which assignment complains of the failure of the court to grant a new trial because the evidence did not support the verdict and the findings of the jury.

The fourth assignment complains of the failure of the court to submit the following requested issue, to wit:

"Did the plaintiff, Clyde Daniels, at the time he was injured, if he was injured, know from notices given him by the Producers' Oil Company, or from signs and posters on the derrick where he was engaged, that the defendant, the Producers' Oil Company, had provided insurance with the State Employers' Insurance Association?"

We will consider this assignment before discussing the fifth and last, heretofore mentioned. There was some evidence on the part of the defendant below tending to show that the defendant company had caused to be posted on all their derricks in the various places of their operation, and on the derrick at which the plaintiff was working at the time he was injured, posters some 12½ by 7 inches, printed in prominent type, giving notice that the Producers' Oil Company had provided for the payment of compensation for the death or injury to its employees under chapter 179, of the Acts of 1913, Thirty-Third Legislature. While plaintiff denied having read or seen these notices, yet the state of evidence made it a question of fact as to whether or not he did do so, if the giving of the notice required by law was complied with by the posting up of these notices on the derrick and their having been read by the employee, plaintiff below.

[5] My brethren are of the opinion that, if notice was given in this way, and seen and read by the plaintiff, such notice would be a compliance with articles 5246x and 5246xx. The writer is inclined to the view that these articles cited contemplate the actual presentation to the employee, or intended employee, of the printed or written notice required. The evident purpose of the act was to benefit the employee by insuring him a speedy and reasonable compensation for his injuries, or a like remedy to his dependent ones in case of his death from injuries sustained while in the employment of a subscriber. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556. But while it was intended primarily for the employee's benefit, said act at the same time takes away from the employee his common-law right of action for injuries sustained in case he accepts employment with a subscriber after having received the notice provided. It was evidently intended by article 5246x and 5246xx that the determination of the question of whether or not the employee in fact knew prior to, or at the time of, his employment and subsequent injury that his employer was a subscriber should not be left to conflicting testimony as to whether he had acquired such information from talking to other employees, or through verbal notice from his employers, or from general repute, or other similar sources of knowledge. Hence, the law provides that the printed or written notice shall be given him. If, after the actual giving of this written or printed

notice to the employee by the employer, the employee fails to read it, he cannot escape the consequences of such notice. But the writer does not believe that it was the intent of the Legislature, in requiring the notice that such notice might be given by means of signs or posters tacked up on the premises where the employee is engaged, or through newspapers read by the employee, or by any other means than the actual delivery to the employee, of such notice. It is true that when the written notice is tendered by the employer, the employee may waive it, as held in Rice v. Garrett (Tex. Civ. App.) 194 S. W. 667. But it is immaterial whether or not the employee acquired the information involved from other sources, as held in Rice v. Garrett, supra. In the opinion of the majority, the issue tendered by defendant below should have been given, and the court's failure to so submit it presents error.

Appellee objects to a consideration of the fifth assignment, because it is claimed that it is too general and does not specifically point out any errors, as is required by the rules; and, second, because it is not followed by any statement, as required by Rule 31 (230 S. W. vii) for the guidance of Courts of Civil Appeals. It is true that the assignment is not followed by any statement, eo nomine; but under the heading "Proposition" it is stated:

"This matter has been discussed as best we could under the assignment concerning peremptory instruction."

Under the assignment referred to, the second, appellant does give a rather full excerpt from the record pertinent to the question of whether or not the preponderating effect of plaintiff's own testimony, outside of the testimony of the defendant's witnesses upon the point, tends very strongly to show that he in fact did receive the notice, and, inasmuch as under the consideration of the said second assignment, we have been compelled to examine the state of evidence fully upon this point, and in view of the conclusion reached by the majority that we should sustain the fourth assignment, which will necessarily work as a reversal of the judgment, we feel disposed to consider the fifth assignment, although not prepared in strict accordance with the rules.

J. O. Williams testified in regard to these cardboard posters:

"These are on boards 7x14 inches in size; in good-sized type or letters; easy to read most any distance. These signs are nailed up on all of the rigs; they are also nailed up on the warehouse at Petrolia in full view, and I think that a man working there several days would see them. These signs are out in a prominent place, in plain view, where a person, if he looked around, could hardly help seeing them in front of him. They are at the warehouse and at the office there in town. This rig where

Daniels was hurt was Byers No. 36. I nailed up two of these signs there myself before he got his injury. A person going in the rig would have to go by one of these signs."

Plaintiff testified:

"I do now admit that I signed two of these papers, marked D-1 and D-2 for identification. I do not know how I forgot that I signed this one at Petrolia. I just don't recollect signing it, but it is signed by me all right. Yes; as I told the jury awhile ago, I did not think that I had signed but one of these papers, but I see my signature signed by me to the other one. * * * I am not going to say that they did or that they did not give me a copy of the notices, because I do not know."

J. T. Saylor, a witness for plaintiff, testified upon this point as follows:

"Yes; I have seen these signboards that the company has up on the derricks about being insured with this state board; I remember seeing some of them on this rig. I saw those signs about insurance also at the warehouse and at the company's office. I also saw those signboards at most all of the other wells. I signed up one of these written notices, but I did not get a copy of it. I have been working for the company since last spring—about the 1st of March. * * * I did not keep me a copy of this notice I signed, and they did not give me a copy. I signed one of these notices a week or so ago. That is the first one that I had signed up—after this injury—and I had been working for them a good while before that."

On recross-examination he testified:

"I do not remember for certain whether that was the first one of these notices I had signed up or not. Yes; the employees out there understand that this insurance law is in force, pretty well, and they talk about it, among each other. I do not believe that I ever discussed it with Daniels. I do not remember that I ever heard Clyde Daniels at any time ever say anything about that they had insurance for him, or that he was working under this Compensation Act."

A. L. Staples, a witness for defendant, testified, in part, as follows:

"Yes, sir; there were a number of signs tacked up there on that rig and a sign like this: [to the tenor of the notice given heretofore in this opinion]; that was the second day I had worked there, and I noticed several notices up there. I am familiar with this notice and they are on all of the rigs that I have worked on for the Producers' Oil Company— same kind of notices. I have been to the warehouse several times and have seen the same kind of bills posted up there. They are in prominent places where they can be seen. They are right inside as you go in at the door; and the print is right large, easily seen."

Strib Moore, a witness for defendant, testified, in part, as follows:

"I have never given a copy of one of these notices to Clyde Daniels, and I do not know of any employee of the Producers' Oil Company that ever gave him one of them. I do not know whether Clyde Daniels ever stopped to read one of these notices nailed up on the rigs. Yes, sir; these insurance notices were nailed up on all of the rigs where work was being done. It is part of my duty to see that they are nailed up where employees work; and the orders we give out is to nail them up in conspicuous places. It is not the custom of the company just to nail them up and not give them to the employees. I do not go out and nail them up myself, but it is the custom for any one working on a rig to nail them up. It has not been the custom of the company to give the employee one of these notices, but we furnish them by nailing them up, where they would be visible to any one."

We are inclined to think that, under the state of evidence upon the question of whether or not plaintiff below had in reality received printed or written notice of the fact that the Producers' Oil Company was a subscriber to the Texas Employers' Association, and had provided for the compensation for its employees under the Act of the Thirty-Third Legislature, 1913, that the court should have granted the motion for a new trial presented by defendant below. While plaintiff denies that he read any of these cards containing the notice tacked up on the rig where he was at work, and while he states in one place that he never received such notice from his employer, and in another place that he does not know whether or not he ever received such notice, and while we would not reverse the judgment rendered by the trial court merely because we believe that, in so far as this issue was concerned, it was against the fair preponderance of the evidence, yet in view of the conclusion of the majority as to the sustaining of the fourth assignment, and in view of our conclusion that the verdict of the jury upon the issue of notice and the judgment based thereon is clearly against the great preponderance of the evidence, we are of the opinion that we are justified in sustaining the fifth assignment. It is the right and duty of the appellate court to set aside a verdict when it is against such a preponderance of the evidence that shows it is clearly wrong. Mo. Pac. Ry. Co. v. Somers, 78 Tex. 439, 14 S. W. 779.

In H. & T. C. Ry. Co. v. Schmidt, 61 Tex. 282, 285, it is said that:

"While the verdict of a jury is entitled to great weight when rendered on evidence reasonably sufficient to sustain it, yet, when rendered contrary to evidence, or against the great preponderance of the evidence, and it is most likely that injustice has been done, trial courts should not hesitate to grant new trials. This court does not exercise the same latitude of discretion in this respect as does the trial court, but when it is manifest that a verdict is clearly contrary to evidence, it has never felt wanting in power to reverse a judgment based on such a verdict."

In Chandler v. Meckling, 22 Tex. 36, 42, it is said:

"When it is clear that the evidence adduced is not reasonably sufficient (under all the circumstances of the case) to satisfy the mind of the truth of allegations, then the verdict should be set aside, on the proper motion being made. Where it is made to appear, or is obvious to this court, that such rule has not been observed by the district court, it then becomes a proper subject of revision by the Supreme Court."

In Ry. Co. v. Brice, 111 S. W. 1094, 1097, it is held that the Court of Civil Appeals clearly has the power to set aside the verdict of the jury and reverse the case on the facts, and should do so: (1) Where there is no evidence to support the verdict; (2) where the evidence is insufficient to support the verdict; and (3) where the evidence upon which the verdict is based is conflicting and the verdict manifestly unjust and against the weight of the evidence.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded.

BUCK, J., dissenting in part.

## On Motion for Rehearing.

BUCK, J. The judgment of the trial court in this cause was reversed and the cause remanded on October 27, 1917, BUCK, J., dissenting to that part of the judgment sustaining the fourth assignment. A motion by appellee was filed, and on December 18th, following, we certified to the Supreme Court one question, whether we erred in sustaining said assignment. The Supreme Court answered this question October 18, 1922, answering that this court did err in sustaining said assignment. See the opinion of the Supreme Court in 244 S. W. 117.

[6] The cause is now before us on appellee's motion for rehearing. The fifth assignment complains of the failure of the court to grant a new trial because the evidence did not support the verdict and the findings of the jury. This contention is based upon the ground that the great preponderance of the evidence was to the effect that the plaintiff was served with notice, "and it was shown that large printed signs were staring him in the face everywhere he worked." The printed posters or signs were not notice as contemplated in this act, as held by the Supreme Court in answer to the certified question. So we will only consider the testimony as bearing upon the question of whether the defendant did actually serve the plaintiff with printed notice that the defendant was a subscriber to the Texas Employers' Insurance Association. The jury found in answer to question No. 1 that the defendant did not give the notice to plaintiff as provided in the act, and, in answer to question No. 2, that plaintiff did not know, prior to the time he was hurt, that the defendant had contracted with the Texas Employers' Insurance Association for the payment of indemnity to its employees. Upon this question of notice, Strib Moore, a witness for defendant, testified as shown in the original opinion. It will be noted that he said:

"It has not been the custom of the company to give the employee one of these notices (referring to the posters or signs), but we furnish them by nailing them up where they would be visible to any one."

On direct examination, plaintiff testified:

"With reference to their allegation in their answer that they gave me notice they were insured in the Texas Employers' Liability Association—will say while I was at Electra I signed up something in their office there. When I signed that, they asked me who to notify if I got hurt, or sick, or anything like that, and that is what they asked me to sign. When they got me to sign that paper, they did not say anything to me about insurance, and they did not give me a copy of what I signed. Will say that I do not recollect whether they gave me a copy of what I signed or not, I would not say for sure whether they did or did not. I do not know from what they said to me at the time I signed that paper, or from anything else at that time or any other time, that they had any insurance in any kind of a concern in Texas for employees. They did not tell me at that time or any time that they had insurance for their employees, and I did not know it. At the time I was injured, on the 14th day of September, I had not been informed by the company in writing or otherwise, or in any way informed, that they had insurance for me of any kind; I had no notice of any kind or character, that I recollect of, that they were carrying insurance in any concern for me. I do not recollect that they at any time told me or that any of their employees told me, or that any man told me, that they were carrying insurance in the Texas Employers' Liability Association, or any other concern, for my protection. They did not give me a copy of any written notice of any kind after I went to work for them the last time. At the time that I received these injuries on the derrick, I did not know anything about them carrying any insurance for me. The first time that I learned that the company claimed to be carrying insurance for me in the Texas Employers' Liability Association, was after I brought this suit, when Mr. Moore carried me down to the office and tried to get me to sign up some insurance papers. One of the boys came up to see me while I was sick, but he did not try to get me to sign any papers. It was some time after the injury that Mr. Moore tried to get me to sign some papers—I should think something like 18 days after the injury. I was coming from the show at that time, walking along and Mr. Moore came up and said, 'Let's go down to the office,' and I went and he wanted me to sign up some kind of insurance papers. Mr. Moore is the agent of the Producers' Company at Petrolia; he at that time also tried to get me to sign some kind of an extra paper, I do not know what that was. I refused to sign all of the papers. Up to the

time that Mr. Moore took me down to the office and tried to get me to sign those papers, after the injury, I do not recollect of having had any notice of any kind or character that the company claimed to have any kind of insurance in any concern for me."

On cross-examination, he stated:

"I know a man by the name of Bunk Reedy; I heard he got hurt, but I was not there at the time. I did not say to Reedy that this compensation law was no good and that the thing to do was to sue them and that he was crazy not to sue them; I do not recollect that. I do not recollect of telling him that I was going to sue them because the law was invalid. I did sign one document at Electra; I do not know what was in that, and I did not get a copy of it that I recollect of. I do not think that I signed any instrument at Petrolia, I do not recollect it, and my best judgment is that I did not sign anything there. I do not know whether there is anything wrong with my recollection. I do not know whether I hurt it when I fell off this derrick or not. I tell the jury that I do not think that I signed one of these papers or notices except the one that I signed at Electra; I am pretty sure of that; I had no other form of notice that I recollect now."

Witness further testified on cross-examination:

"I do not know when I went to work for the company the last time at Petrolia; it was after I left Burkburnett, and I should think it was tolerably late in the spring of 1916. This paper that you now show me is signed T. D. Daniels and I did not sign it—yes; I did. I see I signed it 'Clyde Daniels' above where the T. D. Daniels is written; and this is the one signed at Electra, and I think that is the only one that I signed. This paper that you show me now, I did not sign. This third paper that you now show to me, I did sign; I signed Clyde Daniels. I do not know whether I signed this third one at Petrolia or not; it is dated in April, 1915, and I signed it all right. I was not at Electra in April, 1915, and I only worked for them at Electra and Petrolia. I do now admit that I signed two of these papers (marked D-1 and D-2 for identification) and I dispute signing the other one. I do not know how I come to forget signing this one at Petrolia; I just didn't recollect signing it; but it is signed by me all right. Yes, as I told the jury a while ago, I did not think that I had signed but one of these papers, but I see my signature, signed by me, to the other one, now. I do not recollect of them ever giving me a copy of these papers at the times that I signed them. I see that the notice says: 'I acknowledge receipt of my copy of the above notice, this 1st day of December, 1915, and so on;' but I am not going to say that they did, or that they did not, give me a copy of them, because I don't know. * * * I think that I went to work for the Producers' Oil Company at Electra about a month before Christmas, 1915. I was not working for them there in April, 1915. I do not recollect how I come to sign one of these notices back in April, 1915. The one that is dated the 1st day of December, 1915, is the one that I remember of signing at Electra.

I signed both of these (D-1, D-2); I do not remember anything about signing the one in April, 1915, but it has my signature on it; I signed it. I do not remember anything about signing any notices before I went to work for the Producers' Oil Company about December 1, 1915, at Electra. The other one that Mr. Kay showed me, which I did not sign, is signed 'T. D. Daniels' and I signed both of these 'Clyde Daniels.'"

The cards which plaintiff identified as having been signed by him, and dated April 8, 1915, are as follows:

"C257 15 44 Notice. As required by chapter 179, of the Acts of 1913, of the Legislature of the state of Texas, entitled, 'An act relating to employers' liability and providing for the compensation of certain employees and their representatives and beneficiaries for personal injuries sustained in the course of employment and for death resulting from such injuries,' etc.

"This will give you notice that Producers' Oil Company has provided for payment of compensation for such injuries to its employees under said act with the 'association' as provided in said Act. (This notice is given in duplicate; one copy to be retained by employee, the other copy must be dated and signed by employee and returned to the legal department at Houston, Texas.)

"Producers' Oil Company,
                    "By E. E. Brooks, President.

"I acknowledge receipt of my copy of above notice, this the 8th day of April, 1915, and agree in case of injury to accept compensation under above law and waive all action for damages.
                    "Clyde Daniel, Employee."

The other notice is exactly the same as the April notice, except the last clause, which reads as follows:

"I acknowledge receipt of my copy of above notice this the 1st day of December, 1915, and agree in case of injury to accept compensation under above law and waive all action for damages.          Clyde Daniel, Employee.
                              "Age 27.
"Employed at Electra, Texas.
"Case of injury, notify T. D. Daniels, Petrolia, Texas."

Has stamp by rubber stamp on face of it as follows:

"Received Dec. 6, 1915.  J. S. B."

No other testimony is shown in the record bearing upon the question of notice, except the presence of posters tacked up on the derricks and other places. The burden of proof was on defendant to show the service of notice in plaintiff. These cards signed by plaintiff evidently were not left with him, but were retained by the defendant in their files. Plaintiff testified in one place that no notice was in fact served on him and left with him at the time he signed these two acknowledgments, and at other times he states that he was unable to say whether such notices were given to him or not, but asserts positively at all times that he did not know

that the defendant company was a subscriber to the association; that when he signed these cards he was told that the company merely wanted information as to whom to notify in case of his death, injury, or sickness, and that he did not read them. Where a statute directing notice to be given is silent as to the manner of giving it, personal service is necessary. Producers' Oil Co. v. Daniels, on certified question, supra, and cases cited in 29 Cyc. p. 1119, sub. C-2. Inasmuch as the plea of membership in the Texas Employers' Insurance Association was a special defense, and the burden of proof was on defendant to establish personal notice to plaintiff thereof, at least the majority of us do not believe that we are warranted in disturbing the verdict of the jury and the judgment of the court on that issue. The weight of the testimony and the credibility of the witnesses are matters peculiarly within the province of the jury. Roberts v. Wichita Southern Life Ins. Co., 221 S. W. 268, by Commission of Appeals. We are not able to say that from the evidence before the jury they were not warranted in finding that the defendant had not personally served plaintiff with notice.

The motion of appellee for rehearing is therefore granted, the judgment of reversal is set aside, and the judgment of the trial court is affirmed.

CONNER, C. J. (dissenting). An examination of the opinion of the Supreme Court, in answer to the question we certified to, that court will disclose that what was really held is that the placing of signs or posters on the derricks or other places on the premises where an employee is at work does not constitute "notice" within the meaning of that term, as used in our original compensation law. I do not understand the court to have determined that the cards which plaintiff identified as having been signed by him in April and December, 1915, would not and did not constitute notice under said act that the defendant, the Producers' Oil Company, had provided for payment of compensation for injuries to its employees as required by chapter 179 of the Act of 1913, entitled "An act relating to employers' liability and providing for the compensation of certain employees," etc.

The question of whether such cards constituted notice is presented under another assignment, to wit, the fifth, which is now overruled by the majority opinion, but which, as I interpret the certificate, was not certified for determination. The evidence relating to the subject was considered and its effect determined by this court, all concurring, on original hearing, and we held, as will appear from the original opinion written by Associate Justice Buck, that the verdict of the jury on the issue of notice was against the great weight of the evidence and should be set aside. I yet entertain that view. Exclusive of the evidence relating particularly to the printed notices posted up about the premises, and which the Supreme Court holds insufficient, the appellant offered, among other things, two written or printed notices identified in the statement of facts as exhibits D-1 and D-2. Exhibit D-1 is as follows: "C257 15 44 Notice. As required by Chapter 179, of Acts of 1913, of the Legislature of the State of Texas, entitled:

"'An act relating to employers' liability and providing for the compensation of certain employees and their representatives and beneficiaries for personal injuries sustained in the course of employment, and for death resulting from such injuries,' etc.

"This will give you notice that Producers' Oil Company has provided for payment of compensation for such injuries to its employees under said act with the 'association' as provided in said act. (This notice is given in duplicate, one copy to be retained by employee; the other copy must be dated and signed by employee and returned to the legal department at Houston, Texas.)

"Producers' Oil Company,
"By R. E. Brooks, President.

"I acknowledge receipt of my copy of above notice, this the 8th day of April, 1915, and agree in case of injury to accept compensation under above law and waive all action for damages.　　　　Clyde Daniel, Employee."

Exhibit marked D-2 is exactly the same as exhibit D-1 down to the last clause, which clause reads as follows:

"I acknowledge recipt of my copy of above notice this the 1st day of Dec. 1915, and agree in case of injury to accept compensation under above law and waive all action for damages.　　　　Clyde Daniel, Employee.
"Age 27."

"Employed at Electra, Texas."

The plaintiff distinctly acknowledged his signature to those cards. It is true on examination in chief he denied remembrance of having so signed the statements, but on cross-examination, when shown the cards, he identified his signature as genuine and would not deny that he had received a copy of the cards as recited in the acknowledgment. If he did, he is chargeable with their contents, regardless of whether or not he read the cards, and of his want of remembrance. Under such circumstances, I do not see how to avoid giving effect to his acknowledgments of notice in writing, which, in my judgment, was sufficient under the law in operation at the time.

I accordingly retain our original view of the evidence, and think the fifth assignment should be sustained and the judgment reversed.